ESTATE OF BAILEY : MOON, Administratrix, and others, Appellants, vs. CULLEN, Guardian, Respondent.

*October 12—November 10, 1931.*

For the appellants there were briefs by *Kopp & Brunck-horst* of Platteville, and oral argument by *L. A. Brunckhorst*. *O. B. Porter* of Madison, for the respondent.

OWEN, J.   Lawrence W. Bailey, a citizen of Grant county, died intestate on the 13th day of March, 1926.   Upon her application, letters of administration issued to Cora B. Moon, a sister of the deceased, out of the county court of Grant county on the 13th day of May, 1926.   On the 26th day of October, 1926, a final judgment settling the account of the administratrix and assigning the estate was entered.   The estate was assigned to the brothers and sisters, and the children of a deceased brother, of the deceased.

On the 18th day of December, 1929, James P. Cullen, general guardian of Ruth M. Bailey, alias Ruth M. Clark, filed a petition in the county court of Grant county setting forth that his ward, Ruth M. Bailey, alias Ruth M. Clark, was the minor daughter and sole heir at law of said Lawrence W. Bailey, deceased; that she was not advised nor informed of, nor made a party to, the administration proceedings; that she was in no way represented, and that there was

no guardian *ad litem* appointed to represent her, in such proceedings; that Cora B. Moon, through fraud, procured herself to be appointed administratrix and obtained her proportion of the estate through false and fraudulent representations. The prayer was that the final judgment of distribution be vacated and set aside, and that the court take proof upon the allegation that Ruth, the said ward, was the sole heir of the deceased. Pursuant to the filing of such petition further proceedings were had, the final judgment of distribution was vacated and set aside, an administrator *de bonis non* was appointed, and on the 9th day of December, 1930, a final judgment was entered in the action assigning all of the estate to Ruth Muriel Bailey, alias Ruth Muriel Clark, as the sole heir of the deceased. From that order or judgment Cora B. Moon, as administratrix of the estate of Lawrence W. Bailey, deceased, appealed to this court on the 2d day of January, 1931. Ruth M. Bailey appealed on the 6th day of April, 1931. Emma V. Bailey and May Bailey Jones, sisters of the deceased, to whom portions of the estate were assigned by the first order of distribution, appealed on the 22d day of September, 1931.

Upon the appeal of Cora B. Moon, as administratrix, as well as that of Emma V. Bailey and May Bailey Jones, a review of the determination of the court that Ruth Muriel Bailey, alias Ruth Muriel Clark, was the sole heir at law of the deceased, is sought. A motion to dismiss the appeal of Cora B. Moon, administratrix, was denied by this court on May 12, 1931. A similar motion was made, argued, and taken under advisement by the court on September 15th, to be decided after argument of the principal issues in the case. Whether the appeal of Cora B. Moon, as administratrix, was or is efficient to secure a review of the final order of distribution, is a question that has never been decided by this court. As the administrator does not represent any particular heir, it is generally held that he is not aggrieved if some

heirs receive less than they are entitled to by the order of distribution and, consequently, the administrator has no right to appeal. *Bates v. Ryberg,* 40 Cal. 463; *In re Heydenfeldt,* 117 Cal. 551, 553, 49 Pac. 713; *Vincent's Estate,* 84 Vt. 89, 78 Atl. 714; *Merrick v. Kennedy,* 46 Neb. 264, 64 N. W. 989; *Appeal of Stilphen,* 100 Me. 146, 60 Atl. 888; *Estate of Craig,* 101 Neb. 439, 163 N. W. 765; *Dewar's Estate,* 10 Mont. 422, 25 Pac. 1025; *Estate of Williams,* 122 Cal. 76, 54 Pac. 386; *Bryant v. Thompson,* 128 N. Y. 426, 28 N. E. 522. This is an open question in this court, and a decision thereof does not seem necessary at this time, for the reason that Cora B. Moon was not administratrix of the estate at the time she gave notice of appeal. She had been supplanted by an administrator *de bonis non,* and her appeal in her pretended capacity as administratrix of the estate must be dismissed. She could have appealed as a sister of the deceased and as one of the original distributees of the estate, but she did not appeal in that capacity, and it was frankly stated upon the argument that she appealed as administratrix to avoid the necessity of giving a bond which would have been required had she appealed in her individual capacity.

An objection is made by the respondent, Ruth Muriel Bailey, in her brief upon the main argument, to the appeal of Emma V. Bailey and May Bailey Jones. Efficient objection might have been made to that appeal if made in time. Appeals from orders of the county court must be taken within sixty days. Sec. 324.04, Stats. Their appeal was not taken within sixty days. However, sec. 324.05, Stats., authorizes the county judge, upon cause shown, to allow an appeal thereafter and within one year. These appellants made an application to the county court of Grant county for permission to take the appeal. An order was made by the county court dated the 2d day of September, 1931, allowing these appellants to appeal from the order of September 9, 1930. At that time all of the papers and records in the case had

been transmitted to this court pursuant to the appeal of Cora B. Moon. This transferred jurisdiction of the case from the county court of Grant county to this court. *Seyfert v. Seyfert,* 201 Wis. 223, 226, 229 N. W. 636; *State ex rel. Zabel v. Municipal Court,* 179 Wis. 195, 190 N. W. 121, 191 N. W. 565. The county court thereafter was without jurisdiction and was without power or authority to enter the order. Proper procedure required the appellants to move in this court for a return of the record to enable the court below to consider their application for leave to appeal. It will be noticed that this was an appeal from the final judgment, which brought up the entire record in the case. This is said lest it be thought that an appeal from any order of the county court in a probate proceeding transfers entire jurisdiction of the proceeding to this court. An appeal from an order of the county court transfers to this court only such portions of the proceeding as are germane to the order appealed from.

However, there is another objection to the efficiency of this appeal. The order of the county court permitted Emma V. Bailey and May Bailey Jones to appeal from the order of September 9, 1930. They actually appealed from the order of December 9, 1930. Their appeal, therefore, is without the permission of the county court, and for this and the other reason above stated would have been dismissed had a motion for that purpose been made in due time. However, it is provided by sec. 269.51, in effect, that all objections to the regularity or sufficiency of the appeal are waived unless such objections shall be made by motion to dismiss such appeal before taking or participating in the taking of any other proceedings in the appellate court. As such motion was not made, the irregularities mentioned in the appeal of Emma V. Bailey and May Bailey Jones must be deemed waived, and we have jurisdiction to consider the merits of the case. In passing, we may say that the appeal of Ruth Muriel Bailey

must be dismissed, for the reason that it was not taken in time, and no order of the county court was secured permitting her to appeal.

The question first confronting us is whether the determination of the county court that Ruth Muriel Bailey, alias Ruth Muriel Clark, was the sole heir at law of the deceased, is supported by the law and the evidence. Ruth was, concededly, the illegitimate child of one Pansy Clark, who at the time of the hearing was married to Arlie Dull. The court found that Lawrence W. Bailey, deceased, was the father of Ruth. This finding is sustained by the overwhelming evidence. But the fact that she was his illegitimate offspring does not necessarily make her his heir. Sec. 237.06, Stats., specifies the contingencies under which an illegitimate child shall become the heir of the father. One of such contingencies is, when the father "shall, in writing signed in the presence of a competent witness, have acknowledged himself to be the father of such child." While there are other contingencies specified in that section, proof of that mentioned is the one relied upon to constitute Ruth the heir of the deceased. As this was the law at the time Ruth was born as well as now, we are not concerned with the question of whether the law at present, or the law at the time of her birth, governs the situation. The only question is whether the proof justifies the finding, implied at least by the county judge, that the deceased "in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child."

There is no doubt that deceased was arrested upon a bastardy charge and taken before a justice of the peace at Prairie du Chien, where a settlement was consummated between him and the mother of the child. There were present at such settlement the deceased, the mother, the father of the mother, the district attorney, and the justice of the peace. From the evidence it cannot be well doubted that at that time

a document was drawn up and signed by the deceased. That document could not be produced at the time of the hearing. It had been lost or destroyed. Neither could the docket of the justice of the peace for the year during which that proceeding was had be found and produced at this hearing, although diligent search had been made therefor. The court, under these circumstances, permitted oral testimony of the contents of the paper signed by the deceased. The mother testified that the paper contained this expression: "in full acknowledgment of the above named child I hereby settle this amount for maintenance of said child." Her testimony was clear and explicit that the document signed by the deceased contained the above declaration. There was no testimony to the contrary.

Appellants attempt to discredit this testimony by referring to the forms for settlements in bastardy cases appearing in Bryant's Wisconsin Justice at the time, in which no such language occurs. We do not think it can be assumed that Bryant's form was necessarily followed, and the fact of its existence is not sufficient to destroy the force of her evidence. The proof that the deceased had in writing signed in the presence of a competent witness acknowledged himself to be the father of such child, is fully as strong as was the proof in *Estate of Ecker,* 174 Wis. 432, 182 N. W. 977, which was held to be sufficient to establish such acknowledgment. We do not think that the finding of the county court that Ruth was the heir of the deceased can be disturbed.

The further question arises concerning the power of the county court to amend its original order of distribution. It is a principle now very familiar to the bar that a county court can at any time amend its orders where they have been induced by fraud. *Estate of Staab,* 166 Wis. 587, 166 N. W. 326; *Guardianship of Reeve,* 176 Wis. 579, 186 N. W. 736. It is contended, however, that in this case no fraud was practiced upon the court which induced the original order of dis-

tribution. The argument to this effect is based upon a statement found in the opinion of the county judge that "the court feels that he should state in behalf of Cora B. Moon that the evidence does not disclose that she committed or perpetrated any intentional fraud upon the court." Cora B. Moon was a sister of the deceased. She filed a petition for letters of administration of his estate. In that petition she named his brothers and sisters, and the children of a deceased brother, as his sole heirs at law. She said nothing of the existence of Ruth Muriel Bailey. It was to secure a review of this finding of the county judge that Ruth Muriel Bailey appealed. Cora B. Moon, however, testified that she did not name Ruth as an heir because she did not think Ruth was an heir of the deceased. She testified that she did not say anything about Ruth to her attorney nor to the court; that the court asked her if he (the deceased) had any children and she said No. She further testified, however, that she did know that "they were trying to make believe" that Ruth was his child. The evidence in the case leaves the impression that Cora must have known of the circumstances of the deceased having been arrested in the bastardy proceeding, that she must have known that he settled, and that she also must have known that it was generally understood in that community that Ruth was regarded as the illegitimate child of the deceased. She says she knew "that they were trying to make believe she was his child." We have no difficulty in reaching the conclusion that she was conscious of the true situation and that it was her duty to reveal it to the court. Her omission to inform the court of the fact was passive, if not active, fraud, and we apprehend that all the county judge attempted to do was to exonerate her from active fraud.

If the establishment of fraud were necessary to vindicate the action of the county court in revising the original order of distribution, we should have no difficulty in determining

the existence of fraud sufficient to arouse the power and jurisdiction of the county court. However, a cursory review of the authorities is ample to show that probate courts always have enjoyed unusual powers of control over their proceedings. In *In re Fisher,* 15 Wis. *511, 567, it was held that "A county court sitting as a court of probate may, at any time, in furtherance of justice, revoke an order which has been irregularly made or procured by fraud." It will be noticed that this declaration is broad. An order may be revoked when irregularly made if the revoking order be made in furtherance of justice. This broad declaration was somewhat modified in *Betts v. Shotton,* 27 Wis. 667, where it was held that the power would be lost by the running of the statute of limitations. The opinion in the latter case cited *Heirs of Smith v. Rix,* 9 Vt. 240, as holding "that the court of probate, by petition for that purpose, might correct errors in its former decrees, after any lapse of time short of twenty years, where the interest of the parties only was concerned." This was regarded as a recognition of the principle that the court could not overstep or go beyond the period of the statute of limitations fixed in the particular case. (As to the rights of third parties, *Simpson v. Cornish,* 196 Wis. 125, 218 N. W. 193, should be consulted.) The opinion also referred to *French v. Winsor,* 24 Vt. 402, where it was held that the power was confined to cases still pending in the probate court, or, if not so pending, to cases of fraud, accident, or mistake in the settlement of executors' and administrators' accounts.

The power of courts of probate to set aside or revoke former orders made by them in probate proceedings was further elucidated by DIXON, C. J., in a concurring opinion in *Archer v. Meadows,* 33 Wis. 166, at pages 173 *et seq.* The Chief Justice there said:

"I hold that the probate court has power to grant relief in such cases by revocation of its decree approving the will, and

that this remedy is always open to the injured party, unless the same has been lost by the lapse of time and neglect to prosecute, or barred by the statute of limitations."

Further he says:

"The jurisdiction of courts of probate in this respect seems to be very similar to that exercised by courts of chancery upon bills of review, or bills in the nature of bills of review, brought to examine and reverse decrees made upon former bills; or like that possessed upon bills to impeach decrees upon the ground of fraud. This power of the probate courts is, of course, not an unlimited one, but confined to cases of fraud, mistake, irregularity, want of jurisdiction, and the like."

He quotes from *Campbell v. Thatcher,* 54 Barb. 386, where many situations are recited in which the probate court may exercise its power to revoke and correct its former orders. Among such instances are mentioned those where a decree for distribution had been made, but before distribution a legatee, not known to be in existence, appeared; where the court had acted without acquiring jurisdiction of the person; or where no guardian had been appointed for an infant. A part of the citation from *Campbell v. Thatcher, supra,* is to the effect that "where parties in interest have been represented at the hearing, and final sentence or decree has been given, such court has no general power of opening or reversing its decree, on the ground that it erred as to the law, or decided erroneously upon the facts." *Israel v. Silsbee,* 57 Wis. 222, 15 N. W. 144, and *Estate of Leavens,* 65 Wis. 440, 27 N. W. 324, are cases in which the facts were analogous to the facts in this case, and in which the principles of the earlier cases were applied and relief granted.

We are satisfied that in this case material facts were suppressed by those who claimed the estate and who knew the facts, and that the general order of distribution was entered upon a mistaken notion of the facts. This in itself aroused the jurisdiction of the county court to vacate and amend its

order of distribution. Furthermore, Ruth M. Bailey was an infant, and she was not represented in those proceedings. She was entitled to her day in court and, having moved promptly, even before she arrived at maturity, she was entitled to have a re-examination of the facts upon which the original decree rested, and a revocation thereof if based upon an erroneous understanding of the facts. We conclude that the court had abundant power to revise its original order of distribution.

*Beck v. State,* 196 Wis. 242, 219 N. W. 197, and *Estate of Cudahy,* 196 Wis. 260, 219 N. W. 203, relied upon by appellants, are not applicable here, for at least two reasons: one is, that the proceedings involved in those cases were not probate proceedings. They were special judicial proceedings provided by statute. The other is, that the judgments in those cases were not predicated upon a mistake of fact. The erroneous judgments there dealt with were due to a mistake of law, and, as we have seen, even probate courts cannot vacate their judgments because of mistakes of law.

It is further contended that the order appealed from is void because no notice was given of the application of the guardian of Ruth M. Bailey, praying for the vacation of the original order distributing the estate. It is contended that notice of the motion of the guardian *ad litem* should have been given to all who would be affected by a vacation of the original order or judgment. This might have been true if it were a circuit court proceeding, but it was not. It was a county court proceeding relating to the probate of estates. Sec. 324.19, Stats., provides that "When notice of any proceedings in a county court shall be required by law or be deemed necessary by such court and the manner of giving the same shall not be directed by any statute, such court shall order notice of such proceedings to be given to all persons interested therein in such manner and for such length of time as it shall deem reasonable." The county court ordered that

notice of the hearing of this application should be given by the publication thereof in a newspaper, and such notice was duly published. It is the same or similar notice that is required to be given upon the application for letters of administration or the probate of a will, which, it is held, gives the county court jurisdiction as to all of the world. *Simpson v. Cornish*, 196 Wis. 125, 218 N. W. 193.

While the judgment in this case must be affirmed, the respondent will be denied costs for printing brief, by reason of the failure to supply a "synopsis or brief résumé of the argument," as required by rule 9. While there does appear upon the fly-leaf of the brief a tabulation termed an index, it does not contain the information which enables the court to turn to that part of the brief where it will find counsel's discussion upon any of the many points presented. Such an index utterly fails to comply with the purpose of the rule.

*By the Court.*—The appeals of Cora B. Moon and Ruth Muriel Bailey are dismissed. On the appeal of Emma V. Bailey and May Bailey Jones the judgment is affirmed. No costs to be taxed for printing respondent's brief.